UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GLOIRE I. E.-B.,** | Civil Action No. 20-4661 (SDW) |
| Petitioner, | |
| v. | OPINION |
| **JOHN TSOUKARIS, et al.,** | |
| Respondents. | |

**WIGENTON,** District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Petitioner, Gloire I. E.-B., filed pursuant to 28 U.S.C. § 2241. (ECF No. 1). Also before the Court is Petitioner's motion seeking a temporary restraining order. (ECF No. 3). Following an order to answer, the Government filed a response to the petition and motion (ECF No. 5), to which Petitioner has replied. (ECF No. 7). Petitioner also filed an unopposed motion seeking to seal his medical records. (ECF No. 9). For the following reasons, this Court will grant the motion to seal, deny the petition without prejudice and deny the motion seeking a temporary restraining order as moot in light of the denial of Petitioner's habeas petition.

**I.  BACKGROUND**

Petitioner is a thirty-one year old native and citizen of the Democratic Republic of Congo. (ECF No. 2 at 2; Document 5 attached to ECF No. 5 at 2). Petitioner illegally entered the United States on or about June 7, 2019. (Document 5 attached to ECF No. 5 at 2). Petitioner was thereafter taken into immigration custody pursuant to the Government's discretionary detention authority under 8 U.S.C. § 1226(a) and placed in removal proceedings later in June 2019. (*Id.*; *see*

*also* Document 2 attached to ECF No. 1 at 3). On June 26, 2019, Petitioner was transferred to the Essex County Correctional Facility. (Document 6 attached to ECF No. 5 at 2). He was later moved to the Elizabeth Contract Detention Facility, where he has since remained. (Document 7 attached to ECF No. 5). On January 6, 2020, Petitioner received a bond hearing before an immigration judge. (*Id.*). Following that hearing, the immigration judge denied bond, finding Petitioner to be a flight risk. (*Id.*). Petitioner waived his right to appeal that decision. (*Id.*). On January 9, 2020, the immigration judge denied Petitioner's applications for relief from removal and ordered Petitioner removed. (Document 8 attached to ECF No. 5). Petitioner filed an appeal of that decision with the Board of Immigration Appeals, which is apparently still pending. (ECF No. 5 at 7). On April 28, 2020, Petitioner's immigration counsel filed a motion for a custody redetermination before the immigration judge, but it is not clear what became of that motion at this time. (Document 2 attached to ECF No. 7).

According to the expert reports he submitted with his petition, Petitioner historically suffers from post-traumatic stress disorder and depression stemming from events long preceding his current period of detention, and hypertension. (ECF No. 2 at 19, 21). Petitioner's medical records indicate that he reported to the facility's medical department on March 26, 2020, asking for a blood pressure check without any indicating symptoms. (ECF No. 2 at 14). Because Petitioner's blood pressure was elevated at that time, he was instructed to report any dizziness or other symptoms should they develop, and Petitioner was scheduled for thrice weekly blood pressure monitoring. (*Id.*). Petitioner thereafter received blood pressure checks on March 27 and 28. (*Id.* at 10-13). On March 30, 2020, Petitioner reported to medical asserting that he suffered from a mild body ache which had been ongoing, apparently unreported, for several weeks. (*Id.* at 7-8). Petitioner received an examination which found no clear health issue and was ultimately provided Tylenol for his

pain. (*Id.*). Petitioner thereafter received blood pressure and vital signs checks on March 31 and April 1, during which he reported no symptoms or issues. (*Id.* at 2-6).

Petitioner has not provided any medical records for the period after April 1, 2020. One of Petitioner's lawyers, however, asserts that he told her that he reported to the medical facility again on April 23, 2020, reporting that he was "not feeling well." (Document 2 attached to ECF No. 7 at 2). After an examination, Petitioner was given medication to "help him sleep." (*Id.* at 2-3). Petitioner also told his attorney that one of the medical staff accused him of "lying" about his symptoms. (*Id.*). Petitioner returned to the medical unit on April 26, reporting chest pain. (*Id.* at 3). Petitioner's vital signs were monitored and he was given acetaminophen for his pain when they did not indicate a clear issue. (*Id.*). Petitioner reported for a follow-up the following day, and was again given acetaminophen. (*Id.*).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

**B. Analysis**

In his habeas petition, Petitioner argues that he should be released from immigration detention because he believes that he has been subjected to punitive conditions of confinement and has received insufficient medical care in light of his hypertension, psychological issues, and the general threat posed by the COVID-19 epidemic. As this Court recently explained in *Jorge V.S. v. Green*, No. 20-3675, 2020 WL 1921936, at *2-4 (D.N.J. Apr. 21, 2020), claims such as Petitioner's

> could be construed in two fashions – as a claim asserting that the jail has been deliberately indifferent to Petitioner's medical needs, or as a claim asserting that the conditions under which he is detained amount to an unconstitutional application of punishment without a supporting conviction in violation of the Due Process Clause. As there is no clear guidance from the Courts of Appeals or Supreme Court on how to adjudicate such claims in light of an ongoing pandemic, many courts have found that insufficient jail action in light of the virus can serve as a basis for release under [the circumstances], *see, e.g,*, *Rafael L.O. v. Decker*, No. 20-3481, 2020 WL 1808843 (D.N.J. Apr. 9, 2020); *Cristian A.R. v. Thomas Decker, et al.*, No. 20-3600 (D.N.J. Apr. 12, 2020); *Basank v. Decker*, No. 20-2518, 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020); *Castillo v. Barr*, No. 20-00605, 2020 WL 1502864 (C.D. Cal. Mar. 27, 2020); *Thakker v. Doll*, No. 20-480, 2020 WL 1671563 (M.D. Pa. Mar. 31, 2020); *Malam v. Adducci*, No. 20-10829, 2020 WL 1672662 (E.D. Mich. Apr. 5, 2020); while many others have found that, where the jail takes adequate precautions in light of a given petitioner's medical history, no such relief is warranted. *See, e.g., Dawson v. Asher*, No. 20-409, 2020 WL 1304557 (W.D. Wa. Mar. 19, 2020) (rejecting TRO request because detainees could not succeed on merits of request for relief without at least showing concrete likelihood of actual injury as opposed to mere speculation in light of the legitimate governmental interest in detaining aliens throughout removal proceedings); *Sacal-Micha v. Longoria*, No. 20-37, 2020 WL 1518861 (S.D. Tex. Mar. 27, 2020) (rejecting habeas TRO based on medical conditions of confinement claim as that claim normally must be brought under § 1983, and in any event such a claim is not likely to succeed in the absence of a showing of deliberate indifference to the detainees medical needs); *Lopez v.*

*Lowe*, No. 20-563, 2020 WL 1689874 (M.D. Pa. Apr. 7, 2020) (denying request for TRO by habeas petitioner as he could not establish deliberate indifference to his medical needs).

Turning first to the issue of Petitioner's medical needs, for an immigration detainee to make out a claim for relief based on a jail official's insufficient treatment or deliberate indifference to his medical needs under the Due Process Clause, he must show both that he is subject to a sufficiently serious medical need, and that jail officials have been deliberately indifferent to that need. *See, e.g., Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017); *King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008). Even assuming that [the threat of] COVID-19 in and of itself is a sufficiently serious need, or that Petitioner's [asthma] is sufficiently serious to oblige the jail to take action to alleviate the risk presented by the virus, success on such a claim would still require Petitioner to show that officials at the jail were deliberately indifferent to that need – i.e. that Respondents "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This requires that the [respondent] was "both [] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . dr[e]w th[at] inference." *Id.* Where some treatment or proscriptive action designed to alleviate the medical need has been provided and the dispute is over the adequacy of the treatment or preventative steps taken, federal courts "are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Everett v. Nort*, 547 F. App'x 117, 121 (3d Cir. 2013) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979)). Neither a detainee's subjective dissatisfaction or disagreement with the professional judgment of medical staff as to how best to deal with a medical issue are normally sufficient to establish deliberate indifference. *Hairston v. Director Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014); *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990); *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).

. . . .

. . . A claim challenging conditions [of confinement] under the Due Process Clause [under the theory that those conditions amount to punishment in the absence of a supporting conviction in turn] has both a subjective and objective component – the objective component requiring a showing that the deprivation involved in the

>conditions was sufficiently serious, and the subjective component requiring that jail officials act with a sufficiently culpable mind. [*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979))]. The subjective component can be established by showing an express intent to punish; or by showing that the conditions in question were arbitrary, purposeless, or excessive in relation to the ascribed governmental objective. *Id.* Conditions which are reasonably related to a legitimate government interest and which are not excessive in relationship to that interest will therefore not support a claim in the absence of a showing of an express intent to punish. *Id.* at 67-69. . . . [I]mmigration detention is clearly reasonably related to a legitimate government interest – the Government's interest in securing those subject to removal proceedings pending the conclusion of those proceedings in order to ensure they do not abscond and that they attend those proceedings while also ensuring they are not a danger to the community in the meantime. *See, Dawson*, 2020 WL 1304557 at *2; *see also Jennings*, 138 S. Ct. at 836; *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Zadvydas*, 533 U.S. at 690-91.

Turning first to Petitioner's conditions of confinement, it is clear that the Government has a legitimate interest in securing aliens to ensure their compliance with removal proceedings and, ultimately, their removal from the United States. *Jennings*, 138 S. Ct. at 836, 844; *Zadvydas*, 533 U.S. at 690-91. This interest is especially strong where in this case as an immigration judge specifically found that Petitioner was a flight risk and in turn ordered Petitioner removed. As Petitioner has not shown an express intent to punish on the part of the detention facility or its staff, he can only succeed on his conditions of confinement claim by showing that the conditions applied to him in immigration detention are arbitrary, purposeless, or excessive in relation to the Government's interest in detaining him.

Having reviewed the record of this matter, it is clear that the conditions to which Petitioner is subject are neither arbitrary, purposeless, nor excessive in relation to that interest. As this Court recently recounted in a companion case involving the same detention facility and in which an essentially identical certification was submitted by the medical professional responsible for

overseeing the Elizabeth Contract Detention Facility's response to COVID-19 (*see* Document 9 attached to ECF No. 5),

> Since March 2020, the facility has taken considerable concrete steps to mitigate and alleviate the risk posed to detainees by the COVID-19 pandemic. Specifically, the facility, which is currently operating below fifty percent capacity to ensure adequate space for social distancing, is following CDC guidelines for detention facilities in relation to testing and preventative action. This includes screening each detainee for disabilities, health issues, and any signs of fever or respiratory illness as well as potential prior exposure to COVID-19 when they first arrive at the facility; the isolation, testing, and treatment of those detainees who have symptoms of COVID-19; the transfer of those presenting severe symptoms to local hospitals for treatment; the placement of those who are asymptomatic but have been exposed to infected individuals in separate, cohorted units where they receive daily temperature and symptom monitoring for at least fourteen days; and COVID-19 testing for those who show known symptoms of the virus. Additionally, the facility has increased the frequency of cleaning and sanitization; provided additional soap for detainee use; has supplied both soap and hand sanitizer to the medical clinic, provided COVID-19 related education to inmates and staff; purchased and provided all detainees with masks; limited or eliminated entry into the facility of non-essential personnel, volunteers, and visitors; implemented temperature screening for all staff and vendors entering the facility; and taken steps to ensure detainees remain six feet apart including during meals and during bunk time. Taken in the aggregate, these actions clearly indicate that the facility has taken considerable steps to protect its detainee population, and as a result of these steps, the conditions under which Petitioner is confined are clearly reasonably related to the Government's clear interest in detaining him pending the outcome of his removal proceedings. These conditions are neither purposeless nor arbitrary – they are directly tailored to address the threat posed by COVID-19 and to protect detainees such as Petitioner from the virus to the extent reasonably possible in a civil detention setting.

*Leocadio L.L. v. Tsoukaris*, No. 20-4605, 2020 WL 2764819, at *4 (D.N.J. May 28, 2020) (record citations omitted). As it is clear that the conditions under which Petitioner is detained are neither purposeless or arbitrary and have been refined and tailored towards mitigating the threat of COVID-19, Petitioner has failed to show that the conditions under which he is housed are

excessive, arbitrary, or purposeless, and his conditions of confinement claim thus fails to set forth a cognizable basis for habeas relief. *Jorge V.S.*, 2020 WL 1921936 at *2-4.

Petitioner's deliberate indifference to medical needs claim fares no better as a basis for habeas relief. Here, Petitioner's medical records indicate that he has been seen by medical staff each time he has reported an issue, that he received evaluations where appropriate, and that when his vital signs indicated blood pressure issues, he was placed on periodic monitoring. Petitioner's records further indicate that he has been provided medication where appropriate to help him deal with his reported pain. Even in the instance in which Petitioner claims he was accused of falsifying symptoms, Petitioner has indicated that he received a medical evaluation and pain medication when his discomfort did not result in positive indicators of a treatable issue. Given these actions by medical staff, Petitioner has failed to show that the facility and its staff have recklessly disregarded a known risk of harm to his health or safety – instead the record indicates that medical staff have consistently sought to treat and resolve his reported issues and symptoms, and have been directly monitoring his blood pressure issues. In light of the steps taken by medical professionals at the facility to aid Petitioner when he reported issues, and the numerous steps taken to alleviate the potential threat of COVID-19, Petitioner has failed to show that medical staff acted with deliberate indifference. Petitioner's medical claim therefore fails to serve as a cognizable basis for habeas relief. *Jorge V.S.*, 2020 WL 1921936 at *2-4. As Petitioner has failed to show that he has either been exposed to punitive conditions or that the facility and its staff have been deliberately indifferent to his medical needs, Petitioner's habeas petition fails to state a valid basis for habeas relief, and his petition is therefore denied. Petitioner's motion seeking a temporary restraining order is in turn denied as moot in light of the denial of his petition. In light of the privacy interests Petitioner has in keeping his medical records from public view and the fact that immigration habeas

matters are in any event normally not available for public access, and given the Government's decision not to oppose the motion, Petitioner's motion to seal his medical records (ECF No. 9) is granted.

### III. CONCLUSION

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is DENIED WITHOUT PREJUDICE, his motion seeking a temporary restraining order (ECF No. 3) is DENIED as moot in light of the denial of his habeas petition, and his motion to seal his medical records (ECF No. 9) is GRANTED.  An appropriate order follows.

Dated: June 2, 2020	*s/ Susan D. Wigenton*
	Hon. Susan D. Wigenton,
	United States District Judge